UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON JOHNSON PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RYSHER ENTERTAINMENT, INC., QUALIA CAPTIAL, LLC; and 2929 ENTERTAINMENT, INC., <br><br> Defendants. | CASE NO. CV 09-1906 MMM (JCx) <br><br><br> ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES |

On February 17, 2009, plaintiff Don Johnson Productions, Inc. ("DJP") filed this action against Rysher Entertainment, Inc., Qualia Captial, LLC, and 2929 Entertainment, Inc in Los Angeles Superior Court. Defendants removed the case to federal court on March 19, 2009, asserting that plaintiff's fourth cause of action for an accounting of profits arises under the Copyright Act. On April 7, 2009, DJP filed a motion to remand the action to state court.

## I. FACTUAL BACKGROUND

### A. Allegations in DJP's Complaint

DJP is a corporation based in Los Angeles, wholly owned by actor Don Johnson.[1] In 1994, CBS entered into an agreement with DJP to purchase 22 episodes of a television series starring Johnson, which came to be known as "Nash Bridges."[2] DJP and Rysher entered into an agreement (the "term agreement") to produce and develop the series.[3] Under the term agreement, DJP was to receive a fifty-percent ownership interest in the series copyright if CBS agreed to purchase 66 episodes of "Nash Bridges," making the series eligible for syndication.[4] In addition, the term agreement granted DJP "exclusive control of interactive devices" related to the series.[5] Rysher produced, and CBS purchased, 122 episodes of "Nash Bridges."[6] The show aired on CBS from 1996 through 2001.[7] 2929 acquired Rysher in 2001; it sold Rysher to Qualia in 2006.[8]

DJP alleges that defendants have profited from the syndication of "Nash Bridges" since 1999.[9] It asserts that, as co-owner of the copyright in "Nash Bridges," it is owed 50% of defendants' profit from exploitation of the series.[10] DJP further asserts that, in addition to its rights as copyright co-owner, it is contractually entitled to fifty percent of Rysher's "gross

---

[1] Complaint, ¶ 7.

[2] *Id.*, ¶ 14.

[3] *Id.*, ¶ 15.

[4] *Id.*

[5] *Id.*

[6] *Id.*, ¶ 21.

[7] *Id.*

[8] *Id.*, ¶ 24-26.

[9] *Id.*, ¶¶ 29-30.

[10] *Id.*, ¶ 33.

receipts" from the series, as that term is defined in the term agreement.[11] Finally, DJP contends that defendants have frustrated its efforts to develop "interactive devices" related to "Nash Bridges."[12]

The complaint asserts claims against all defendants for breach of contract, conversion, unjust enrichment, accounting of profits, and intentional interference with prospective economic advantage. In their notice of removal, defendants argue that DJP's claim for an accounting of profits presents a federal question. The claim alleges:

> "Under copyright law, a co-owner of a copyright must account to other co-owners for any profits earned from licensing or use of the copyright. As a 50% owner of the Nash Bridges copyright, DJP is entitled to 50% of the profits as determined by Generally Accepted Accounting Principles (GAAP) earned from exploiting the Series."[13]

DJP contends that the parties' rights in the series' copyright are entirely based on the term agreement, and the case thus does not present a federal question. It asserts that its claim for an accounting is based on state law principles, and does not give rise to federal question jurisdiction.

In their opposition to the motion to remand, defendants identify as a further basis for federal jurisdiction the fact that DJP's unjust enrichment and conversion claims are completely preempted by the Copyright Act.

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the

---

[11] *Id.*, ¶ 36.

[12] *Id.*, ¶¶ 39-40.

[13] *Id.*, ¶ 58.

district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If at any time before final judgment[, however,] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhard v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

Removal jurisdiction can be based on diversity of citizenship or on the existence of a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required"); see also 28 U.S.C. § 1441(b); 28 U.S.C. § 1331 (the district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Federal question jurisdiction is presumed to be absent unless defendants, as the parties seeking removal, show that plaintiffs have either alleged a federal claim (*American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)), a state cause of action that requires resolution of a substantial issue of federal law (*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921)), or a state cause of action that Congress has transformed into an inherently federal claim by completely preempting the field (*Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

Since a defendant may remove a case under § 1441(b) only if the claim could originally have been filed in federal court, whether removal jurisdiction exists must be determined by

4

reference to the "well-pleaded complaint." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The well-pleaded complaint rule makes plaintiff the "master of the claim." *Caterpillar*, 482 U.S. at 392. Thus, where plaintiff can state claims under both federal and state law, he can prevent removal by ignoring the federal claim and alleging only state law claims. *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

For federal question jurisdiction to attach, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936). Only where the "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties" does a state law cause of action "arise under" the laws of the United States. *Franchise Tax Bd.*, 463 U.S. at 13 (1983). A claim does not present a "substantial question" of federal law merely because a federal question is an "ingredient" of the cause of action. Indeed, "the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow*, 478 U.S. at 813.

Likewise, it is not enough for removal purposes that a federal question may arise in connection with a defense or counterclaim. "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. See also *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). "A defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). See also *Metropolitan Life Ins. Co.*, 481 U.S. at 63. Thus, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14.

**B.  Whether a Cause of Action for an Accounting by a Copyright Co-Owner Gives Rise to Federal Question Jurisdiction**

"Whether a complaint asserting factually related copyright and contract claims arises under the federal copyright laws for purposes of Section 1338(a) poses among the knottiest procedural problems in copyright jurisprudence." *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347

(2d Cir. 2000) (citation and internal quotations omitted). Federal courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338(a). "At the same time, it is well established that just because a case involves a copyright does not mean that federal subject matter jurisdiction exists." *Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*, 336 F.3d 982, 985 (9th Cir. 2003); *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380 (9th Cir. 1988) ("Although the action clearly involves a copyright, this fact alone does not satisfy federal jurisdictional requirements"); *Muse v. Mellin*, 212 F.Supp. 315, 316 (S.D.N.Y. 1962) ("[T]he word 'copyright' is not so compelling as to invoke federal jurisdiction upon its mere mention"), aff'd, 339 F.2d 888 (2d Cir. 1964); *Simon & Flynn, Inc. v. Time Inc.*, 513 F.2d 832, 833 (2d Cir. 1975) (an "aroma of copyright" is insufficient to support the conclusion that an action arises under the Copyright Act); see also *Effects Assocs., Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir.1987) ("Copyright ownership is comprised of a bundle of rights; in granting a nonexclusive license[, the copyright owner] has given up only one stick from that bundle – the right to sue . . . for copyright infringement. [The copyright owner] retains the right to sue . . . in state court on a variety of other grounds, including breach of contract").

To determine if copyright subject matter jurisdiction exists, the Ninth Circuit applies the test set forth in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir.1964):

> "[A]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproductions, or asserts a claim requiring construction of the Act . . . or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *Scholastic*, 336 F.3d at 986 (quoting *T.B. Harms*, 339 F.2d at 828).

This test "is essentially a reiteration of the 'well-pleaded complaint' rule that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint." *Id.* Applying the *T.B. Harms* test, federal courts regularly dismiss copyright complaints that present only questions of contract law. *Id.* (citing *Dolch v. United Cal. Bank*, 702 F.2d 178, 180 (9th

6

Cir. 1983)).

DJP's rights in the Nash Bridges copyright derive entirely from the term agreement; the case is thus essentially a contract dispute. Defendants nonetheless argue that the accounting of profits DJP seeks gives rise to federal question jurisdiction. As defendants acknowledge, the duty to account imposed on co-owners of a copyright is not "a remedy expressly granted by the [Copyright] Act." *T.B. Harms*, 339 F.2d at 828. They contend, however, that it is an equitable remedy based on federal common law and thus a source of federal question jurisdiction.[14] As defendants put it, "[a]n analysis of the history and creation of the duty to account among co-owners of a copyright reveals that it is a matter of federal common law – created by federal courts, studied by the federal Copyright Office, and addressed by Congress in the legislative history of the 1976 Copyright Act."[15]

The Ninth Circuit considered the source of the duty to account among co-owners of a copyright in *Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984). There, the court observed that "[a] co-owner of a copyright must account to other co-owners for any profits he earns from licensing or use of the copyright, but the duty to account does not derive from the copyright law's proscription of infringement. Rather, it comes from equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners." *Id.* at 633 (citations and internal quotation marks omitted). As a result, the court explained, "a suit to bring the co-owner of a copyright to account does not fall within the district court's jurisdiction over actions arising under the copyright law." *Id.* at 633 n. 5.

The "equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners" that govern the accounting remedy derive from state law, not federal common law. In *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG*, 510 F.3d 77, 98 (1st Cir. 2007), the First Circuit, like the Ninth, expressly rejected the view that the right to an accounting has its source in federal common law:

---

[14] Defendants' Opposition to Plaintiff's Motion for Remand ("Opp.") at 2.

[15] *Id.* at 6.

7

> "[T]he Copyright Act, which sets forth express remedies available to copyright owners against infringers, deliberately omits any comparable express or implied remedy for a co-owner seeking an accounting from a joint copyright owner who has profited from use of the copyright. The Act's legislative history unambiguously explains the reason for this omission: '[t]here is . . . no need for a specific statutory provision concerning [the] rights and duties of the coowners of a work; court-made law on this point is left undisturbed.' H.R.Rep. No. 94-1676, at 121, reprinted in 1976 U.S.C.C.A.N. 5659, 5736. To the extent that this residual court-made law involves the common-law rights of tenants in common, the primary source always has been state (and not federal) law, and the Copyright Act contains no hint that Congress intended to usurp the state courts' traditional jurisdiction to adjudicate these types of claims."

Other courts are in agreement with *Oddo* and *Cambridge* that an action by a co-owner of a copyright for an accounting does not arise under federal law. See *Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004) ("When co-ownership is conceded and the only issue therefore is the contractual, or in the absence of contract the equitable, division of the profits from the copyrighted work, there is no issue of copyright law and the suit for an accounting of profits therefore arises under state rather than federal law"); *Goodman v. Lee*, 78 F.3d 1007, 1012 (5th Cir. 1996) ("The applicability of federal law ends with th[e] determination [of copyright ownership], as Goodman's claim for an accounting is governed in all respects by state law"); *Community for Creative Non-Violence v. Reid*, 846 F.2d 1485, 1498 (D.C. Cir. 1988) ("Joint authors co-owning copyright in a work 'are deemed to be tenants in common,' with 'each having an independent right to use or license the copyright, subject only to a duty to account to the other co-owner for any profits owned thereby,'" citing W. Patry, LATMAN'S THE COPYRIGHT LAW 116 (6th ed. 1986)); *Brown v. Mono Records*, No. CV-00-286-ST, 2000 WL 33244473, *7 (D. Or. June 6, 2000) ("While protecting the rights of the owner and co-owners against all others, the Copyright Act should not preempt the traditional state law jurisprudence over matters relating to the ownership rights and duties that exist between co-owners"); *Dead Kennedys v. Biafra*, 37

F.Supp.2d 1151, 1152 (N.D. Cal. 1999) ("An action for an accounting or determination of ownership as between alleged co-owners is founded in state law and does not arise under the copyright laws"); *Iza Music Corp. v. W & K Music Corp.*, 995 F.Supp. 417, 418 (S.D.N.Y. 1998) ("Because. . . a joint author's right to an accounting is a creature of state law rather than of the Copyright Act, an action seeking an accounting alone does not satisfy any of the three prongs of Judge Friendly's test [in *T.B. Harms*] and therefore does not invoke the Court's subject matter jurisdiction under § 1338").

Defendants invite the court to ignore this precedent, contending that *Oddo*'s conclusion that "a suit to bring the co-owner of a copyright to account does not fall within the district court's jurisdiction over actions arising under the copyright law" is *dicta*.[16] They assert that the conclusion was not necessary to the court's resolution of the case. In the Ninth Circuit, however, an issue presented for review, addressed by the court and decided by a majority of the panel "bec[o]mes law of the circuit, regardless of whether it [is] in some technical sense 'necessary' to [the Court's] disposition of the case." See *Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005). Moreover, the *Oddo* court decided that the defendant was "required to account to [the plaintiff] for any profits he [ ] made from use of th[e] [jointly owned] copyrights." *Oddo*, 743 F.2d at 633. Thus, the court necessarily had to determine the source of defendant's obligation, and its conclusion was not *dicta*, even under the "necessary to the disposition" standard suggested by defendants.

Defendants also maintain that the court should reject *Oddo* and other cases holding that the duty to account is a matter of state law as wrongly decided. In support of this position, defendants argue that the early cases defining the scope of co-ownership rights in copyrights were federal cases. They contend that these cases "did not apply state property law to copyright[; rather,] they analogized [state law] principles in defining the scope of a federal right."[17] Defendants cite *Maurel v. Smith*, 220 F. 195 (S.D.N.Y. 1915), *Klein v. Beach*, 232 F. 240 (S.D.N.Y. 1916), and

---

[16]Opp. at 15.

[17]Mot. at 10.

9

*Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 73 F.Supp. 165 (S.D.N.Y. 1947). Defendants offer no analysis, quotations, or pin cites to support their conclusion that these cases applied federal common law rather than state law. The cases refer to principles governing tenancy-in-common, but nothing in any of them compels the conclusion that the courts were "analogizing" to state law rather than applying it. Defendants note that, in enacting the Copyright Act of 1976, Congress indicated that the statute would preserve "present law" regarding co-ownership.[18] Since defendants have not demonstrated that co-ownership rights prior to 1976 were governed by federal law, however, the fact that the 1976 Act preserved existing law in this area does not advance their position. Rather, other courts that have considered the congressional decision to preserve existing law regarding co-owners have concluded that Congress intended to preserve federal courts' application of state law in this area. *Siegel v. Warner Bros. Entertainment Inc.*, 581 F.Supp.2d 1067, 1070 (C.D. Cal. 2008) ("The 1976 Copyright Act embodied the basic principle under the 1909 Act that 'authors of a joint work are co-owners of the copyright.' 17 U.S.C. § 201. The legislative history to the 1976 Act further confirmed that, under this pre-existing law, 'the rights and duties of co-owners of a work . . . was left undisturbed . . . and co-owners of a copyright . . . are treated generally as tenants in common . . . subject to a duty to account to other co-owners for any profits.' H. Rep. No. 94-1476 at 120-21, 94th Cong.2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5736. While the interests plaintiffs have recaptured are based in copyright, it is the nature of the resulting relationship between plaintiffs and defendants that gives rise to their accounting claims, a relationship grounded in state common law principles of tenancy in common and the duties of a trustee").

Defendants finally urge that "[i]f the state courts were vested with the power to determine the nature and scope of co-ownership rights and remedies, each state would have the authority to apply a different rule," frustrating the federal interest in the uniform enforcement of copyright

---

[18]*Id.* at 11.

law.[19] Defendants' argument is speculative, as there is no indication that state laws governing the accounting remedy differ in any significant aspect. Further, courts regularly look to state law to fill gaps left by Congress in the Copyright Act. See *Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) ("In enacting the Copyright Act, Congress did not preempt the field. Thus, where the Copyright Act does not address an issue, we turn to state law to resolve the matter, so long as state law does not otherwise conflict with the Copyright Act" (citations omitted)). More fundamentally, even if defendants' policy and historical arguments were compelling, the court would still be bound to follow Ninth Circuit precedent. Accordingly, DJP's cause of action for an accounting does not give rise to federal question jurisdiction.

### C. Whether DJP's Conversion and Unjust Enrichment Claims Are Completely Preempted by the Copyright Act

17 U.S.C. § 301(a) states:

> "On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a).

Under § 301(a), state law claims are completely preempted by federal copyright law only if they concern a work fixed in a tangible medium of expression that comes within the subject matter of copyright, and the state law rights asserted are equivalent to rights within the general scope of copyright as defined in section 106 of the Copyright Act. See *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *KNB Enterprises v. Matthews*, 78 Cal.App.4th 362, 369

---

[19]*Id.* at 14.

1  (2000).[20] To determine whether a state law claim is preempted, the court must ask two questions:
2  (1) does the property at issue fall within the subject matter of copyright; and (2) if it does, is
3  plaintiff seeking to vindicate state rights that are qualitatively different than those afforded by the
4  Copyright Act?

5  Here, there is no question that "Nash Bridges" falls within the subject matter of copyright.
6  The issue, therefore, is whether DJP seeks to vindicate a right that is equivalent to the rights
7  afforded by the Copyright Act. A right equivalent to copyright is one that is infringed by acts that
8  constitute copyright infringement. See, e.g., *Balboa Ins. Co. v. Trans Global Equities*, 218
9  Cal.App.3d 1327, 1339 (1990) (citing 1 M. Nimmer, NIMMER ON COPYRIGHT, § 1.01[B]).
10 Because defendants are co-owners with plaintiff of a copyright in the series, their actions cannot
11 constitute copyright infringement. See *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1034 (9th
12 2000) ("[A] co-owner of a copyright cannot be liable to another co-owner for infringement,"
13 citing *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) (citing *Oddo*, 743 F.2d at 632-33)).
14 The Copyright Act does not grant a co-owner of copyright any rights against another co-owner.
15 Rather, as discussed above, those rights derive from state law. Thus, in asserting rights against
16 defendants, DJP is not attempting to vindicate the right to prevent infringement granted by the
17 Copyright Act, or any other right under the Act. Rather, DJP's unjust enrichment and conversion
18 claims are based on defendants' violation of DJP's state law rights as a co-owner. Accordingly,
19 DJP's unjust enrichment and conversion claims are not preempted.

20 **D.    DJP's Request for Attorneys' Fees**

21 DJP seeks attorneys' fees under 28 U.S.C. § 1447(c). Section 1447(c) provides in part:

---

[20]See also 17 U.S.C. § 301:
"[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

12

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Attorneys' fees may be awarded under § 1447(c) even absent a finding that the removal was frivolous, vexatious, or in bad faith. See *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446-48 (9th Cir. 1992). In fact, the Ninth Circuit has made clear that an award of attorneys' fees is permissible even if defendant's removal was "fairly supportable," but wrong as a matter of law. See *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 n. 6 (9th Cir. 2000).

The decision to grant fees under § 1447(c) therefore rests in the sound discretion of the trial court. See *Toumajian v. Frailey*, 135 F.3d 648, 657 (9th Cir. 1998) ("[U]pon remand for lack of subject matter jurisdiction court may require payment of just costs and any actual expenses, including attorney's fees incurred as a result of the removal"); *Gotro v. R&B Realty Group*, 69 F.3d 1485, 1487-88 (9th Cir. 1995) (recognizing that the district court has broad discretion to award attorneys' fees incurred as a result of removal under § 1447(c)); *Moore*, 981 F.2d at 447 ("Given the wide discretion provided the district court by § 1447(c), we will review an award of attorney's fees under this statute for abuse of discretion").

In determining whether to award fees and costs, the court must assess the merits of defendant's removal petition. See *Moore*, 981 F.2d at 447; see also *Balcorta*, 208 F.3d at 1106, n. 6 ; *Gray v. New York Life Ins. Co.*, 906 F. Supp. 628, 634 (N.D. Ala. 1995) ("[T]he decision as to whether to award fees under § 1447(c) turns primarily, if not solely, on the merit of the removal").

Here, the court has found that defendants' assertion of federal question jurisdiction on the basis of DJP's request for an accounting was wrong as matter of law. Under § 1447(c), therefore, the court has the discretion to award fees. The court notes, however, that DJP's complaint alleged that its right to an accounting derived not from state law, but from "copyright law" – that is, from federal law.[21] This is precisely the basis on which defendants removed the case. Considering that defendants removed on a principle erroneously, if perhaps accidentally, asserted in DJP's

---

[21]Complaint, ¶ 58.

complaint, the court exercises its discretion against awarding DJP reasonable attorneys' fees.

### III.  CONCLUSION

For the foregoing reasons, the court grants DJP's motion to remand and denies its request for attorneys' fees. The clerk is directed to remand the action to state court forthwith.

DATED: June 8, 2009

　　　　　　　　　　　　　　　　　　_/s/ Margaret M. Morrow_
　　　　　　　　　　　　　　　　　　MARGARET M. MORROW
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE